IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KRISTEN ANN DAVIES, | : | 1:15-cv-2348 |
| | : | |
| Plaintiff, | : | Hon. John E. Jones III |
| | : | |
| v. | : | |
| | : | |
| FIRST RELIANCE STANDARD LIFE INSURANCE COMPANY, | : | |
| | : | |
| Defendant, | : | |

### MEMORANDUM

### March 9, 2017

Presently pending before the Court are the parties' cross motions for summary judgment. (Docs. 13, 19). Plaintiff Kristen Ann Davies initiated this action under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et. seq*. ("ERISA"), alleging that Defendant First Reliance Standard Life Insurance Company ("First Reliance") arbitrarily and capriciously denied her ongoing disability benefits. (Doc. 1). Plaintiff filed a motion for summary judgment on October 14, 2016, along with a brief in support. (Docs. 13, 14). First Reliance filed a brief in opposition on November 28, 2016 (Doc. 16), including argument in support of its own cross motion for summary judgment that was formally filed later. (Doc. 19). Plaintiff filed a brief in opposition to First Reliance's cross motion on December 14, 2016. (Doc. 17). First Reliance filed a

brief in reply on January 4, 2017. (Doc. 23). While Plaintiff did not file a brief in reply with regard to her own motion for summary judgment, the time for filing has long passed (*See* Local Rule 7.7) and she inherently included reply argument in her opposition to First Reliance's motion. Therefore, the motions are fully briefed and ripe for our review. For the following reasons, we shall grant summary judgment in favor of First Reliance.

## I. BACKGROUND

First Reliance sold a group long term disability insurance policy, LTD 118674 (the "Policy"), to Plaintiff's employer, Forest Laboratories, Inc. (Doc. 13, ¶ 4). Prior to claiming disability, Plaintiff worked for Forest Laboratories, Inc. as a Pharmaceutical Detailer, which is a light level occupation. (Doc. 15, p. 20, ¶ 2). The relationship between First Reliance, Forest Laboratories, Inc., and Plaintiff is governed by ERISA. (Doc. 13, at ¶ 5).

The Policy includes the following provision: "[t]he claims review fiduciary has the discretionary authority to interpret the Plan and the insurance policy to determine eligibility for benefits." (*Id.*, at ¶ 9). First Reliance granted itself discretion as the "claims review fiduciary" and "is solely responsible for claim handling, claim reviews, and claim decisions." (*Id.*, at ¶¶ 9-10). The Policy defines "Total Disability" as follows:

> "'Totally Disabled' and 'Total Disability' mean, that as a result of an Injury or Sickness:

> (1) during the Elimination Period and for the first 24 months for which a Monthly Benefit is payable, an Insured cannot perform the material duties of his/her Regular Occupation;
>> (a) 'Partially Disabled' and 'Partial Disability' mean that as a result of an Injury or Sickness an Insured is capable of performing the material duties of his/her Regular Occupation on a part-time basis or some of the material duties on a full-time basis. An Insured who is Partially Disabled will be considered Totally Disabled, except during the Elimination Period;
>> (b) 'Residual Disability' means being Partially Disabled during the Elimination Period. Residual Disability will be considered a Total Disability; and
>
> (2) after a Monthly Benefit has been paid for 24 months, an Insured cannot perform the material duties of Any Occupation. We consider the Insured Totally Disabled if due to an Injury or Sickness he or she is capable of only performing the material duties on a part-time basis or part of the material duties on a Full-time basis."

(AR0010).[1] The Policy also includes the following limitation, which we will refer to as the "Mental/Nervous limitation":

> "**MENTAL OR NERVOUS DISORDERS:** Monthly Benefits for Total Disability caused by or contributed to by mental or nervous disorders will not be payable beyond an aggregate lifetime maximum duration of twenty-four (24) months unless the Insured is in a Hospital or Institution at the end of the twenty-four (24) month period. The Monthly Benefit will be payable while so confined, but not beyond the Maximum Duration of Benefits. . .
>
> Mental or Nervous Disorders are defined to include disorders which are diagnosed to include a condition such as:
> (1) bipolar disorder (manic depressive syndrome);
> (2) schizophrenia;
> (3) delusional (paranoid) disorders;
> (4) psychotic disorders;

---

[1] The Administrative Record is attached to First Reliance's statement of facts (Doc. 15) at attachments 2-15. We will cite to the record using the "AR" number assigned to each page.

    (5) depressive disorders;
    (6) anxiety disorders;
    (7) somatoform disorders (psychosomatic illness);
    (8) eating disorders; or
    (9) mental illness"

(AR0022).

Plaintiff was in a motor vehicle accident in December 2009. (Doc. 13, ¶ 17). Following the accident, Plaintiff experienced symptoms that resulted in diagnoses of fibromyalgia, chronic migraines, chronic fatigue/insomnia/narcolepsy, and cervical dystonia. (*Id.*). Plaintiff returned to work after her accident until August 3, 2011. (*Id.*, at ¶ 20). Plaintiff's disability benefits claim was approved and paid out for two years, from January 2012 until January 2014. (Doc. 13, p. 20, ¶ 4). Pursuant to the Policy, following the 24 month period of benefits, Plaintiff's disability standard changed from being capable of performing her "Regular Occupation" to being capable of performing "Any Occupation". (Doc. 13, ¶ 35). The Mental/Nervous limitation also applies following a 24 month period of benefits. (AR022).

On October 29, 2013, First Reliance concluded that Plaintiff did not have a physical total disability that prevented her from working any occupation, and if she was totally disabled from any occupation it was due to psychological impairments subject to the Mental/Nervous limitation, and therefore discontinued benefits effective January 31, 2014. (AR0358-361). First Reliance states that this decision

was based upon all of the medical records available and the conclusions of an independent physician engaged to review the records and examine Plaintiff. (Doc. 15, pp. 21-29). Plaintiff appealed this decision, submitted more medical records, and in part argued that First Reliance should have had her examined by a rheumatologist. (Doc. 15, p. 30, ¶¶ 20-21). First Reliance engaged rheumatologist Sheldon Solomon, M.D. to review Plaintiff's records and examine her. (Doc. 15, p. 30, ¶ 22). Dr. Solomon was unable to make a definitive diagnosis, but concluded that Plaintiff was capable of working at a light level. (*Id.*, at p. 31, ¶¶ 24-25). On March 19, 2015, First Reliance upheld its decision to terminate Plaintiff's benefits effective January 30, 2014. (*Id.*, at ¶ 28).

First Reliance maintains that the decision to terminate benefits and uphold that termination was based upon a review of all of Plaintiff's medical records available to them, including physician statements and treatment notes from her neurologist, her rheumatologist, two of her psychiatrists, and another doctor who examined her for her headaches. (Doc. 15, pp. 21-29). First Reliance engaged an independent physician, Lucian Bednarz, to perform a record review and medical examination of the Plaintiff, and states that it relied on his conclusions in denying benefits to Plaintiff as well. (Doc. 15, p. 29, ¶ 14). Dr. Bednarz confirmed several diagnoses, including fibromyalgia, chronic fatigue, and depression/anxiety. (*Id.*, at p. 30, ¶ 16).

Plaintiff admits that all of the physician statements and treatment notes referenced by First Reliance are within the administrative record, but denies that First Reliance considered these facts in its benefit termination and appeal determination. (Doc. 18, ¶¶ 12-13). Plaintiff bases this allegation on a First Reliance report of denial, the benefits termination letter and the letter upholding that termination after appeal because they either only reference Dr. Bednarz's conclusions or only briefly reference other medical records. (*Id.*) (*See*, *e.g.*, AR0278) (First Reliance note where it only references Dr. Bednarz's conclusions).

Plaintiff exhausted her administrative remedies through the appeal process, and initiated this claim under ERISA on December 7, 2015. (Doc. 1).

## II.   STANDARD OF REVIEW

Summary judgment is appropriate if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  A dispute is "genuine" only if there is a sufficient evidentiary basis for a reasonable jury to find for the non-moving party, and a fact is "material" only if it might affect the outcome of the action under the governing law.  *See Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 172 (3d Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A court should view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences therefrom, and should not

evaluate credibility or weigh the evidence.  *See Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 772 (3d Cir. 2013) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

Initially, the moving party bears the burden of demonstrating the absence of a genuine dispute of material fact, and upon satisfaction of that burden, the non-movant must go beyond the pleadings, pointing to particular facts that evidence a genuine dispute for trial.  *See id.* at 773 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).  In advancing their positions, the parties must support their factual assertions by citing to specific parts of the record or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. Civ. P. 56(c)(1).

A court should not grant summary judgment when there is a disagreement about the facts or the proper inferences that a factfinder could draw from them. *See Reedy v. Evanson*, 615 F.3d 197, 210 (3d Cir. 2010) (citing *Peterson v. Lehigh Valley Dist. Council*, 676 F.2d 81, 84 (3d Cir. 1982)).  Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."  *Layshock ex rel. Layshock v. Hermitage Sch. Dist.*, 650 F.3d 205, 211 (3d Cir. 2011) (quoting *Anderson*, 477 U.S. at 247-48) (internal quotation marks omitted).

## III. DISCUSSION

Section 1132(a)(1)(B) of ERISA provides plaintiffs a right of action "to recover benefits due to him under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B). To prevail on a claim under § 1132(a)(1)(B), Plaintiff must demonstrate that she has "a right to benefits that is legally enforceable against the plan, and that the plan administrator improperly denied those benefits." *Fleisher v. Standard Ins. Co.*, 679 F.3d 116, 120 (3d Cir. 2012) (internal quotations omitted).

Plaintiff offers two main arguments in support of her motion for summary judgment: first, Plaintiff argues that we should not give First Reliance the usual amount of deference called for in this type of case because of structural and procedural conflicts of interest. (Doc. 14, pp. 3-10). Second, Plaintiff argues that she is totally disabled from any occupation under the Policy and that First Reliance's denial was arbitrary and capricious. (*Id.*, at pp. 10-15). First Reliance maintains that Plaintiff cannot establish that its denial of benefits was arbitrary or capricious and moves for judgment in its favor. We will first consider the proper standard of review with which to view Plaintiff's claim and then analyze First Reliance's denial of benefits under ERISA.

### A. Level of Deference

The Supreme Court has instructed that courts are to review the denial of benefits challenged under § 1132(a)(1)(B) "under a *de novo* standard unless the

benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). When a plan grants its administrator the discretion to determine eligibility or to construe the plan terms, "we review a denial of benefits under an 'arbitrary and capricious' standard." *Orvosh v. Program of Grp. Ins. for Salaried Employees of Volkswagen of Am., Inc.*, 222 F.3d 123, 129 (3d Cir. 2000).

"An administrator's decision is arbitrary and capricious 'if it is without reason, unsupported by substantial evidence or erroneous as a matter of law.'" *Miller v. Am. Airlines, Inc.*, 632 F.3d 837, 845 (3d Cir.2011) (quoting *Abnathya v. Hoffmann–La Roche*, Inc., 2 F.3d 40, 45 (3d Cir.1993)) (internal quotation marks omitted). The arbitrary and capricious standard of review is essentially the same as the abuse of discretion standard. *Rizzo v. Paul Revere Ins. Grp.*, 925 F. Supp. 302, 310 (D.N.J. 1996), aff'd, 111 F.3d 127 (3d Cir. 1997). Under this standard, the "scope of review is narrow and 'the court is not free to substitute its own judgment for that of the defendants in determining eligibility for plan benefits.'" *Abnathya,* 2 F.3d at 45 (quoting *Lucash v. Strick Corp.*, 602 F.Supp. 430, 434 (E.D.Pa.1984)).

Plaintiff acknowledges that "arbitrary and capricious" is the correct standard of review because of First Reliance's discretionary authority as claims fiduciary, but argues that the level of deference must "be lessened by structural and

procedural conflicts." (Doc. 14, p. 3). The argument that structural and procedural conflicts should change the standard of review is traced to *Pinto v. Reliance Standard Life Ins. Co.*, 214 F.3d 377, 378 (3d Cir. 2000). There, the Third Circuit stated that where a structural conflict of interest exists, namely "when an insurance company both funds and administers benefits," a heightened standard of review is applicable. *Id*. However, the *Pinto* sliding scale of standards of review was abrogated by the Supreme Court in *Metropolitan Life Insurance Co. v. Glenn*, 554 U.S. 105 (2008).

Post-*Glenn*, the Third Circuit has found that the "'sliding scale' approach is no longer valid." *Estate of Schwing v. The Lilly Health Plan*, 562 F.3d 522, 525 (3d Cir. 2009). "Instead, courts reviewing the decisions of ERISA plan administrators or fiduciaries in civil enforcement actions brought pursuant to 29 U.S.C. § 1132(a)(1)(B) should apply a deferential abuse of discretion standard of review across the board and consider any conflict of interest as one of several factors in considering whether the administrator or the fiduciary abused its discretion." *Id.*

Therefore, we will apply the traditional 'arbitrary and capricious' standard of review in determining whether First Reliance improperly denied Plaintiff disability benefits beyond 24 months, and consider the structural and procedural conflicts of interest as part of that analysis.

### B. First Reliance's Termination of Benefits

Our role is to determine whether First Reliance's decision to terminate benefits was "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Miller*, 632 F.3d at 845 (quotation marks omitted). Plaintiff points to structural and procedural conflicts of interest, treatment notes detailing her symptoms and conditions, and the lack of credibility of First Reliance's independent rheumatologist in support of her contention that First Reliance's denial of benefits was arbitrary and capricious.

First Reliance admits that there is a structural conflict of interest because it makes eligibility determinations and is also responsible for paying benefits. (Doc. 16, p. 3). Pursuant to *Glenn*, this conflict of interest is just one of the many factors to consider in deciding whether there has been an abuse of discretion. *Estate of Schwing*, 562 F.3d at 525.

Plaintiff points to two First Reliance claim notes from September and October 2013 to demonstrate a procedural conflict of interest. (Doc. 14, p. 5). These notes state, respectively, "[a]ny occ[upation] is around the corner . . . certainly seems there is sed[entary] capacity . . . ***pay and close***" and "I am assuming not [totally disabled] any occ[upation] and ***pay and close***." (AR075-076) (emphasis added). Plaintiff argues that these notes reflect First Reliance's pre-

determination that she was not totally disabled from any occupation. (Doc. 14, p. 5).

Plaintiff then lists ten more "procedural shortcomings" including the lack of a phone call or meeting between First Reliance and the Plaintiff, First Reliance's wholesale adoption of its independent doctors' opinions, the failure of First Reliance to reach out to Plaintiff's doctors, and the failure to abide by its own internal claims guidelines. (*Id.*, at 7-8). These procedural shortcomings are undoubtedly relevant to whether First Reliance abused its discretion, but many are conclusory allegations by the Plaintiff without any cited support, such as the "lack and absence of any real, fair, appropriate consideration" of her appeal, failure to "consider a material term of its Policy", and failure to "fully and properly consider" her pain medications and side effects. (*Id.* at p. 8). Plaintiff also points to First Reliance's sister company, Reliance Standard Life Insurance Company, to suggest a pattern of procedural inadequacies in claim handling because some courts have found that the company decides claims based on financial motives. (*Id.*, at p. 9). We consider all of these procedural conflicts of interest in evaluating whether First Reliance's termination of benefits was proper.

Finally, Plaintiff argues that Dr. Solomon, the independent rheumatologist retained by First Reliance to review Plaintiff's records and conduct an examination

of her, is not credible and First Reliance's dependence on his report renders its decision arbitrary and capricious. (*Id.*, at pp. 11-15).

In response, First Reliance has cited to a multitude of evidence that it relied upon in determining that Plaintiff was not totally disabled, and even if she were, that it would be subject to the Mental/Nervous limitation. (Doc. 16, pp. 6-11). Importantly, much of the support that First Reliance cites to in support of applying the Mental/Nervous limitation to bar her disability benefits comes from Plaintiff's own treating physicians. We will not labor to restate all of the supporting evidence, but chief among that evidence are the following points:

- Plaintiff's own response that she "suffers from *depression*, fibromyalgia, sleep problems, *anxiety*, headaches and confusion." (AR0279) (emphasis added). Plaintiff also stated in her brief in this matter that her "subjective symptoms including pain, fatigue, headaches, *anxiety*, confusion . . . *all* combine to disable Ms. Davies from any work." (Doc. 14, p. 2) (emphasis added).
- Plaintiff's rheumatologist, David Trosle, identified both "chronic pain" and "chronic depression" as the symptoms that prevent Plaintiff from working. (AR0437)

- Plaintiff's psychiatrist identified severe major depressive disorder and anxiety as primary diagnoses on an Attending Physician Statement in support of Plaintiff's disability claim. (AR0398).

- Plaintiff's neurologist identified anxiety and depression as two of Plaintiff's primary diagnoses on an Attending Physician Statement in support of Plaintiff's disability claim. (AR0394).

- Plaintiff's psychiatrist identified "severe anxiety" and "stress tolerance" as conditions that prevented Plaintiff from working. (AR0434).

It is important to note that in many, if not all, of the records cited to by First Reliance, physical diagnoses such as fibromyalgia and migraines are also documented. (*See*, *e.g.*, AR0434). However, the Mental/Nervous limitation applies to bar benefits for diagnoses that are "caused by *or contributed to by* mental or nervous disorders." (AR0022) (emphasis added). First Reliance readily acknowledges that Plaintiff would be entitled to benefits if her physical conditions alone caused her to be totally disabled from any occupation. (Doc. 16, p. 7). However, First Reliance determined that her physical disability did not independently prevent her from work in any occupation, and concluded that if she was totally disabled at all it was due to the contributory effect of her Mental/Nervous disorders. (AR0358-0361).

First Reliance not only cited to Plaintiff's own physicians statements that Mental/Nervous disorders contribute to her disability, but provided record cites to treatment notes that are filled with documentation of Plaintiff's anxiety and depression. (*See* Doc. 15, pp. 21-29). Further, First Reliance's relied on its two independent medical examiners who concluded that Plaintiff was capable of light level, sedentary work. (AR0797, AR0961-965).

To be entitled to benefits, Plaintiff must establish that it was arbitrary and capricious for First Reliance to determine that her physical conditions alone did not render her totally disabled from performing any occupation. In an attempt to do so, Plaintiff provides a list of six pieces of evidence that purport to be "more than sufficient proof of an [sic] ongoing physical limitations and restrictions independently and completely due to her physical conditions and Fibromyalgia diagnosis." (Doc. 17, pp. 2-3). Three of these point to physician reports in which her anxiety or depression are documented, and therefore do not provide the support of an independent physical disability that Plaintiff claims. (*See* AR0845-0852, AR0853-0855, and AR0836-0866). One points to a list of common side effects of Plaintiff's medications, which obviously does not provide support of an independent physical disability because there is no indication as to which side effects Plaintiff experiences or how they render her totally disabled from any occupation. (AR0858-0862). Next, one points to Plaintiff's delineation of issues

with First Reliance's independent physician's report, and finally, one points to the Plaintiff's mother's subjective belief that she is physically disabled. (Doc. 14, p. 3). Of course, neither of these are affirmative, objective evidence that Plaintiff is totally disabled due to physical disability. Especially in light of First Reliance's abundance of record support for its decision to terminate benefits, Plaintiff clearly has not met her burden to establish that she was entitled to benefits due to a physical total disability.

To be sure, the "arbitrary and capricious" standard of review is a deferential standard that is difficult to overcome. Considering the structural conflict of interest at play, the procedural inadequacies argued by Plaintiff, and all of the medical evidence available to First Reliance in making its benefits determination, we cannot conclude that the decision to terminate benefits was "without reason, unsupported by substantial evidence or erroneous as a matter of law." Miller, 632 F.3d at 845 (quotation marks omitted). Accordingly, First Reliance is entitled to summary judgment in its favor.

## IV. CONCLUSION

For the foregoing reasons, we shall grant Defendant's Motion for Summary Judgment (Doc. 19) and deny Plaintiff's Motion for Summary Judgment. (Doc. 13). A separate order shall issue in accordance with this ruling.